822 F.2d 56
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee.
v.
George Paul LAROQUE, Defendant-Appellant.
 No. 86-5040.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 14, 1986.
Decided June 23, 1987.
 
 Before SPROUSE and WILKINSON, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 Dean Robert Davis, on brief, for appellant.
 Karen Ingrid Skrivseth, Department of Justice (Samuel T. Currin, United States Attorney; Thomas Swaim, Assistant United States Attorney, on brief), for appellee.
 PER CURIAM:
 
 
 1
 LaRoque was convicted on each of two counts of federal firearms violations and one count of failure to appear for trial. On appeal, he presents numerous contentions, principally the failure of the trial judge to recuse himself, refusing directed verdicts of acquittal on the firearms counts and in failing to declare a mistrial. We find no merit in any of the contentions.
 
 I.
 
 2
 LaRoque, who worked for a time as an undercover agent for the FBI in connection with investigations of white collar crimes, had purchased from a licensed firearms dealer a 9 millimeter Uzi semi-automatic rifle. The weapon was legal, and the sale to LaRoque was properly registered. Apparently, however, LaRoque cut off 5 3/4 inches of the barrel, leaving the barrel only two or three inches long. He showed the snub-nosed weapon in late 1981 to another FBI informant, William Sonny Moore. Later, he sought Moore's assistance and that of yet another FBI informant, Terrence Owen Miller, in obtaining two silencers for the weapon. Later, LaRoque gave Moore the 5 3/4 inch long cut-off section of the barrel so that Moore could have a silencer threaded to fit it.
 
 
 3
 Moore and Miller reported these developments to FBI agent Whatley, who turned over the investigation to Bureau of Alcohol, Tobacco and Firearms agent, Robert Bowen. Under Bowen's direction, a BATF agent met with LaRoque to consummate the sale of a silencer for cash. LaRoque, then in possession of the silencer, was immediately arrested.
 
 II.
 
 4
 LaRoque was indicted on one count of possessing an unregistered, short-barrel, semi-automatic Uzi rifle and on another count of possessing an unregistered silencer, each in violation of 26 U.S.C. Sec. 5861(d). LaRoque entered into a plea agreement in which he agreed to enter a plea of guilty to the first count charging unlawful possession of the modified Uzi in return for which the second count would be dismissed, and the prosecution would recommend probation. At a hearing, after reviewing the presentence report, Judge Britt informed LaRoque that he could not follow the government's recommendation of probation, but he gave LaRoque the option of withdrawing from the plea agreement. LaRoque did so, and the trial was continued until August 16, 1982 to provide LaRoque with time for trial preparation.
 
 
 5
 LaRoque did not appear for trial on August 16, 1982, and it was approximately three years later that he was found in Australia.
 
 
 6
 Meanwhile, he had been indicted for failure to appear for trial.
 
 
 7
 In a consolidated trial, he was tried and convicted on each of the two weapons offense charges and on the failure to appear charge. He was sentenced to two concurrent seven year terms on the weapons offenses, and a consecutive sentence of five years on the failure to appear charge.
 
 III.
 
 8
 Fed.R.Crim.P. 32(c)(1) provides that a presentence report not be presented to the court or its contents disclosed unless the defendant has entered a plea of guilty, or nolo contendre, or has been found guilty. When finally brought to trial, LaRoque made a motion that Judge Britt recuse himself because of the judge's having read the presentence report three years earlier in 1981.
 
 
 9
 There was strict compliance with the Rule. At the time the trial judge read the presentence report, LaRoque stood before him upon a plea of guilty. The Rule says nothing of the disqualification of a judge if a guilty plea is withdrawn after the judge has read a presentence report.
 
 
 10
 In denying the motion to recuse, the judge stated unequivocally that he remembered nothing of the contents of the report. This is entirely understandable, since three years had passed since he had read the report. Recusal in the circumstances would have done nothing to enhance the fairness of the trial and would only have served the purpose of delay.
 
 
 11
 Generally, the requirements of Rule 32 are to be strictly observed. See Gregg v. United States, 394 U.S. 489, 491-92 (1969). When the judge read the report, however, his reading was strictly in compliance with the Rule. His failure to recuse himself after withdrawal of the plea and after the lapse of three years in time was not an abuse of discretion. Accord, United States v. Bunch, 730 F.2d 517 (7th Cir.1984); United States v. Montecalvo, 545 F.2d 684 (9th Cir.1976), cert. denied, 431 U.S. 918 (1977).
 
 IV.
 
 12
 The defendant questions the sufficiency of the evidence to sustain the two firearms offense convictions.
 
 
 13
 It is true that there was no direct evidence that he possessed the Uzi on May 18, 1982, the date charged in the indictment, but there was abundant circumstantial evidence that he did. He had earlier shown the weapon with its sawed-off barrel to Moore, and he persistently sought the assistance of Moore and Miller in obtaining a silencer for it. Indeed, he supplied the sawed-off portion of the barrel to them to be certain that the silencer would be machined to fit it. He wanted to purchase two, one for immediate attachment to the gun and a second to hold as a standby. There would have been no point in his persistent effort to purchase a silencer for the weapon if he no longer possessed the weapon.
 
 
 14
 He was caught redhanded with the silencer, of course. The agent testified to delivery of the silencer to LaRoque and LaRoque's payment of the purchase price, all pursuant to an earlier agreement. The arrest followed immediately after the transaction.
 
 V.
 
 15
 Moore had received two checks from the FBI, one for $128.08 and another for $294.72. Those two checks in combination were intended to provide a fee of $350 and the balance was expense reimbursement. At the time of trial, however, Moore apparently had forgotten about the receipt of those two checks, and on cross-examination, defense counsel attempted to show that his cooperation with the FBI had been motivated by an expectation of financial reward. Receipt of the checks, however, left Moore substantially impeached when defense counsel concluded his cross-examination.
 
 
 16
 On re-direct, the prosecutor sought to rehabilitate Moore by asking why he had cooperated with the investigation. Moore replied that he had not expected any financial reward but that he had cooperated because he believed that the defendant was a dangerously violent man because LaRoque had told him that he once "had a girl killed." He thought it important that such a man not be allowed to continue in possession of a sawed-off semi-automatic rifle.
 
 
 17
 On appeal, LaRoque contends that Moore's remark was not responsive to the prosecutor's question and that it was offered solely to inflame the jury and prejudice the defendant.
 
 
 18
 Unquestionably, Moore's statement on re-direct examination was inflammatory. On cross-examination, however, he had been substantially impeached by a strong suggestion that he had acted for personal financial gain. After defense counsel had opened up the question of the motivation of the witness, the prosecutor, not improperly, asked Moore to state the real reason for his cooperation. Moore's answer was a direct one. Of course, the answer was damaging to the defense, but once the defense had opened up the question of Moore's motive, it could not properly object when Moore's direct response suggested that the defendant was a man of violence.
 
 VI.
 
 19
 Defense counsel have submitted other contentions on appeal. Furthermore, LaRoque has filed a supplemental brief in his own behalf in which he questions the validity of his extradition from Australia and contends that the time in which he could be brought to trial under the Speedy Trial Act commenced with his first detention in Australia rather than the time of his arrest in the United States. We find no merit in any of those contentions presented by LaRoque or by his counsel.
 
 
 20
 AFFIRMED.